UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VIENNA EQHO FARMS,

    Plaintiff,

v.

BAYER CROPSCIENCE LP; *et al.*,

    Defendants.

Case No. 21-cv-204-NJR

**MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM
LEAD CLASS COUNSEL FOR JOHN W. "DON" BARRETT
AND BARRETT LAW GROUP, P.A.**

**Introduction**

Leading and coordinating antitrust class actions requires a strong understanding of antirust jurisprudence and strategy, as well as judgment gained from having led, and succeeded in, similar cases. Lead counsel applicant John W. "Don" Barrett and his firm Barrett Law Group, P.A. ("BLG"), have that experience, including in this District, and are uniquely situated to lead this action as sole interim lead counsel. To achieve maximum efficiency and efficacy, and avoid "the risk of overstaffing"[1] this Court should appoint Mr. Barrett and his firm as interim lead counsel to represent the putative classes.

Mr. Barrett and BLG seek appointment as interim lead class counsel on behalf of the following classes:

A.     All persons or entities residing in the United States, including its territories, from at least as early as January 1, 2014 and continuing through the present (the "Class Period"), that purchased from a Defendant a Crop Input manufactured by a Manufacturer Defendant; and

B.     All persons or entities residing in the United States, including its territories, that,

---

[1] Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment.

1

during the Class Period, purchased from a retailer other than a Retailer Defendant a Crop Input manufactured by a Manufacturer Defendant.

Don Barrett and BLG have vast experience litigating and trying complex class actions.[2] Mr. Barrett has significant antitrust experience and has successfully led multiple antitrust actions, including, recently, in the Southern District of Illinois, where Mr. Barrett was co-lead counsel for direct butter and cheese purchasers in an action involving an agricultural cartel like that at issue here. *See* Mem. and Order, *First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, Case No. 3:13-cv-00454-NJR-SCW, Doc. No. 301 (S.D. Ill. Dec. 8, 2017) (appointing Don Barrett as co-lead class counsel, and finding that Don Barrett (and his co-leads) "possess the experience knowledge, and resources needed to fairly and adequately serve as class counsel.").

Mr. Barrett maintains a nationwide complex civil litigation practice including antitrust class action litigation and has significant experience shepherding these kinds of large-scale class actions to successful conclusions. Mr. Barrett has served as lead counsel or as a member of the executive committee in numerous antitrust class action cases. Mr. Barrett also has the valuable, and rare, experience of successfully trying a certified national class action case, in federal court, to a verdict for the class. (Barrett Decl. at ¶ 19). He is also co-lead class counsel for the Automobile Dealer Actions in *In Re: Automotive Parts Antitrust Litigation*, MDL No. 2311, pending before Judge Sean Cox (previously before Judge Marianne Battani) in the Eastern District of Michigan. (*Id.* at ¶ 9). In that capacity, he represents some 16,000 automobile dealers in 31 states, victimized by one of the largest price-fixing conspiracies in history.

Rule 23(g) of the Federal Rules of Civil Procedure requires that the Court "must appoint the applicant best able to represent the interests of" the plaintiffs. Fed. R. Civ. P. 23(g). Mr. Barrett

---

[2] Mr. Barrett's declaration and accompanying affidavit, attached hereto, demonstrate his expansive antitrust and complex litigation experience. BLG's firm resume, attached as Exhibit A, highlights the firms' vast experience.

is best able to represent the interests of these putative classes because he has done exactly that in other actions. He and his firm have and will commit the resources necessary to successfully pursue this litigation and will work efficiently for the members of the putative classes. His experience representing businesses in antitrust and other complex actions makes him "best able to represent" the interests of the classes.

## Legal Standard

Federal Rule of Civil Procedure 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the class." "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities ...." Manual For Complex Litigation (Fourth) § 21.11 (2004). When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *See Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *7 (N.D. Ill. May 30, 2020). Rule 23(g)(1)(A) provides that the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

When more than one counsel satisfies these requirements for adequacy, Rule 23(g)(2) provides that the court "must appoint the applicant best able to represent the interests of" the plaintiffs. *Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 U.S. Dist. LEXIS 58803, at *9 (N.D. Ill. May 26, 2011) (citing FED. R. CIV. P. 23(g)(2)).

## Argument

Mr. Barrett and BLG readily meet all of Rule 23(g)'s requirements to be appointed as interim lead class counsel. They have investigated the claims and the alleged conspiracy in this

matter; have a plethora of experience litigating class actions, antitrust cases and other complex litigation; are highly knowledgeable in antitrust law; and have the resources available to fully represent the proposed classes. Additionally, because BLG has both the resources and experience to prosecute this action on its own, the appointment of a single law firm, BLG, is appropriate and will provide the proposed classes the efficiency, financial resources, and class action experience that they deserve.

## I.     Proposed Leadership Structure.

Mr. Barrett will avoid the tendency to "make work" and will engage the right attorneys with the right experience, as needed. Handling the litigation this way provides a safeguard against excessive common benefit fee requests. The one-lead structure proposed in this application will avoid unnecessary bureaucracy and duplication of effort. Respectfully, a multi-firm co-lead counsel format "is not one that fosters efficiency—instead it tends to promote a duplication of effort via conferencing, as well as overlapping work assignments and other inefficiencies too often attendant on such a structure. And that of course inevitably tends to increase the lodestar figure without any corresponding increase in meaningful lawyer output." *In re Stericycle, Inc.*, No. 13 C 5795, 2013 U.S. Dist. LEXIS 147718, at *3 (N.D. Ill. Oct. 11, 2013); *see also Singer v. Nicor, Inc.*, Nos. 02 C 5168, 02 C 5239, 02 C 5319, 02 C 5558, 02 C 6037, 2002 U.S. Dist. LEXIS 19884, at *4 (N.D. Ill. Oct. 16, 2002) (selecting one candidate as lead plaintiff in a PSLRA case because "the court can foresee a number of reasons why such an arrangement [multiple lead plaintiff firms] would be less beneficial: increased costs and a more cumbersome decision-making process raise the greatest concerns."); *Salyers v. Boomer*, No. 10 C 7131, 2011 U.S. Dist. LEXIS 73238, at *6 (N.D. Ill. July 5, 2011) (declining to appoint multi-firm lead counsel because "[t]here is no reason to think that two heads would be better than one in this suit, whereas appointing two lead plaintiffs

and two law firms as lead counsel would have created the potential for disagreements and inefficiencies""). A single-lead structure serves the purpose of the Rule 23 Committee Note, which warns of "the risk of overstaffing or an ungainly counsel structure."[3]

## II. Mr. Barrett is Well-Qualified and Satisfies the Rule 23 Prerequisites For Leadership.

The Court should appoint Mr. Barrett and BLG to serve as Interim Co-Lead Counsel for the classes. He and his firm have extensive experience leading—not just working on—antitrust matters. More importantly, he has actually led and coordinated, with success, other antitrust class actions. His roles in *Auto Parts, First Impressions Salon, Inc.*, and *In Re: Inter-Op Hip Prosthesis Liability Litigation,* make him best qualified to lead the class litigation here. (Barrett Decl. at ¶¶ 9, 4 and 18).

As noted above, Rule 23 dictates that courts must look to the following factors when considering motions such as this:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A). These factors confirm that Mr. Barrett and his firm are well-qualified to serve as Lead Counsel, and are "best able to represent the interests of the class." FED. R. CIV. P. 23(g)(2).

---

[3] The Manual for Complex Litigation also cautions against the appointment of too many firms to lead or litigate a matter and that "the number should not be so large as to defeat the purpose of making such appointments." Manual for Complex Litigation 3rd § 20.221, pp. 27–28.

### A. Mr. Barrett's Significant Work on this Case and Experience with Similar Actions will Enable him to Manage this Case Efficiently and Effectively.

Before filing this case, Mr. Barrett and his firm invested significant time and resources into this litigation, including investigating and drafting the complaint, investigating the nature of the alleged conspiracy and its effect on Plaintiff and the classes, and coordinating strategy with co-counsel. (Barrett Decl. at ¶ 3).

Mr. Barrett is familiar with and has addressed a variety of antitrust issues throughout his career, such as standing and classwide proof of damages, including in the context of another antitrust action involving an agricultural cartel, litigated in this District. Many of the same issues that confronted the plaintiffs in the *Auto Parts* and *First Impressions Salon, Inc.* cases led by Mr. Barrett will also be present here. Before filing this action, Mr. Barrett was acutely familiar with the potential claims, defenses, challenges, and opportunities for Plaintiff and the classes.

Mr. Barrett is prepared to implement billing and expense directives for the law firms working on this case and will coordinate the activities of those firms. (Barrett Decl. at ¶ 3). Mr. Barrett will carefully monitor and assign work to avoid unnecessary duplication of effort. (*Id.*). He will also establish a litigation fund to pay for the costs incurred to advance the plaintiffs' claims. (*Id.*).

### B. Mr. Barrett Has Significant Experience Handling Class Actions, Other Complex Litigation, and Claims of the Type Asserted in This Action.

An applicant's experience and knowledge of the applicable law in a class action lawsuit is a determining factor in lead counsel appointments. *See*, *e.g.*, *Lively v. Dynegy, Inc.*, No. 05-cv-00063-MJR, 2007 U.S. Dist. LEXIS 14794, at *57 (S.D. Ill. Mar. 2, 2007); *see also Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 445 (N.D. Ill. 2009) (appointing counsel

with "extensive experience in class action litigation and settlement."). Ultimately, the Court must appoint the "best able to represent the interests of the class." FED. R. CIV. P. 23(g)(2).

Mr. Barrett's experience in antitrust and other complex litigation makes him well-suited to serve as interim lead counsel here.

### 1. Mr. Barrett and BLG's Antitrust Experience.

Mr. Barrett and BLG have particularly deep antitrust experience. (See Barrett Decl.) Mr. Barrett was recently appointed as interim co-lead counsel of a direct purchaser class in an antitrust action, finding that Mr. Barrett has "substantial experience litigating complex commercial disputes including class action and antitrust matters . . ." Op., *In Re Insulin Pricing Litigation*, No. 3:17-cv-699, Doc. No. 376 (D. NJ Sept. 22, 2020); (Barrett Decl. at ¶ 5).

In *First Impressions Salon, Inc.*, Mr. Barrett was appointed co-lead counsel in this antitrust action and helped negotiate a $200 million settlement on the eve of trial. The Court gave final approval to this settlement on April 27, 2020. (*Id.* at ¶ 4). Mr. Barrett has also represented the State of Mississippi in its effort to recover monies lost by the state and Mississippi consumers, as a result of an alleged price-fixing conspiracy among infant formula manufacturers, and was co-counsel for plaintiffs in thirteen state court class actions involving this same price-fixing conspiracy, resulting in multi-million-dollar settlements. (*Id.* at ¶ 12).

Mr. Barrett also served as lead class counsel and lead trial attorney for the plaintiffs in a national class action against State Farm Mutual Insurance Company in Illinois, concerning State Farm's use of imitation crash parts in auto repair. (*Id.* at ¶ 19). After a seven-week trial, the jury awarded a verdict of $456 million and an additional $600 million in punitive damages was awarded by the trial judge; the largest verdict ever rendered in the State of Illinois. (*Id.*). As a result of that litigation, Mr. Barrett was named the first-ever "Litigator of the Month" by the National Law

Journal in its issue of November 22, 1999. (*Id.*). This verdict was subsequently affirmed by a unanimous Illinois Court of Appeals, and reversed by the Illinois Supreme Court. (*Id.*). From the ashes of that case arose *Hale v. State Farm Mutual Insurance Co.*, No. 3:12-cv-00660, filed in this District, and on September 13, 2018, after the trial jury was empaneled, and over 21 years after the original litigation began, Judge Herndon granted final approval to a settlement with State Farm for $250 million. (*Id.*). From the bench, Judge Herndon stated, "important principles have been vindicated by this settlement," and also that, "Class Counsel were diligent…and they performed at the highest level of professional standards." (*Id.*). On July 29, 2019, BLG was awarded the Public Justice Foundation's *2019 Trial Lawyer of the Year* award as part of the *Hale v. State Farm* trial team. https://www.publicjustice.net/2019-tloy-winner/.

BLG also represents plaintiffs in the following pending antitrust cases: *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.) (Counsel for Indirect Resellers); *Harvesters Enterprises, LLC v. Bumble Bee Foods, LLC*, 3:15-cv-02785 (S.D. Cal.); *Sandee's Bakery v. Agri Stats, Inc.*, No. 0:18-cv-01891 (D. Minn.); *Sandee's Bakery v. Agri Stats, Inc.*, No. 20-cv-02295 (N.D. Ill.); *Portland Hunt-Alpine Club, LLC* v. *Mowi ASA*, No. 2:19-cv-0446 (D. Me.); *In Re: Dealer Management Systems Antitrust Litigation,* MDL No. 2817 (N.D. Ill.); and *In re Google Inc. Antitrust Litigation*; MDL No. 2981 (N.D. Cal.).

### 2. Mr. Barrett and BLG's Class Action and Complex Litigation Experience.

Mr. Barrett and BLG provide a wealth of litigation, leadership, claims resolution, and strategy experience. They have successfully led large, multidistrict litigation with a demonstrated ability to organize and manage large litigation and to do so cooperatively with counsel for all of the involved parties. (*See* Barrett Decl.). Other federal courts have recognized this by appointing these attorneys to leadership positions in other MDL and class actions. (*Id.*). BLG presently

represents hospital plaintiffs against manufacturers, distributors and dispensers of opioids. On January 4, 2018, Judge Dan Polster, presiding over *In Re: National Prescription Opiate Litigation,* MDL No. 2804 (N.D. Ohio), appointed Mr. Barrett to the Plaintiffs' Executive Committee as the representative of hospitals. (*Id.* at ¶ 8).

Mr. Barrett also serves as lead counsel in a group of thirty-five attorneys from around the country prosecuting cases, mostly in California, against major food producers who routinely misbrand their food products to hide unhealthy ingredients. As a result of this litigation, Mr. Barrett has been featured in stories on the front page of the *New York Times* and in the London *Sunday Times*. On May 28, 2015, Mr. Barrett was appointed co-lead counsel for plaintiffs in *In Re: Coca-Cola Products Marketing and Sales Practices Litigation,* MDL No.14-02555, by Judge Jeffrey White of the Northern District of California. Class certification has been granted and the case is proceeding towards trial. (*Id.* at ¶¶ 11-12).

BLG also currently represents the State of Mississippi and Mississippi landowners against the United States for a taking of thousands of acres for a floodway along the Mississippi River. The firm currently represents over 500,000 acres along the River.

BLG recently represented Bridgestone Americas, Inc., the largest manufacturer and seller of tires in the Western Hemisphere, in a multi-million-dollar fraud lawsuit against IBM, over the failed implementation of a business enterprise computer system for the entire company. That suit settled on the eve of trial.

In 2001, Mr. Barrett was named by Judge Kathleen O'Malley, U.S.D.C., Northern District of Ohio, to the Plaintiffs' Steering Committee in *In Re: Inter-Op Hip Prosthesis Liability Litigation*, MDL No. 1401, and was a principal negotiator for the plaintiff class for a $1.045 billion settlement reached with defendants. (*Id.* at ¶ 18).

Since 1986, Mr. Barrett and the firm have taken a national leadership role in litigation against cigarette companies, and Mr. Barrett is one of only a handful of plaintiffs' attorneys in the United States to have tried three tobacco liability cases through jury submission. Mr. Barrett had a leadership role in the massive *Castano* class action litigation in the U.S. District Court in New Orleans, and in its related state class action cases around the country. Mr. Barrett is one of the attorneys who represented the State of Mississippi in the state's successful efforts to recover its cigarette-related health care monies sent over the past years. Mr. Barrett also represented the Attorneys General of New York, Louisiana, Arizona, Washington, Indiana, Alaska, Idaho, Oregon, Rhode Island, Ohio, Vermont, Illinois, and Puerto Rico in their successful litigation against the tobacco industry. Mr. Barrett also helped negotiate the landmark settlement with Liggett Group announced in March of 1996, and was one of the lead attorneys in the historic settlement agreement entered into by twenty-two Attorneys General with Liggett Group on March 20, 1997. (Barrett Decl. ¶ 25). Mr. Barrett's litigation experiences have been chronicled in various national publications, including the *ABA Journal, The New York Times, The American Lawyers, the Wall Street Journal,* and *The Washington Post.* Two books concerning tobacco litigation featured Mr. Barrett: Cornered: Big Tobacco at the Bar of Justice, by Peter Pringle (Henry Holt and Company, New York City, 1998); and The People vs. Big Tobacco, by Carrick Mollencamp, et al. (Bloomberg Press, Princeton, N.J., 1998), and his experiences in tobacco litigation are the primary focus of another book, Assuming the Risk, by Michael Orey (Little, Brown & Co., New York City, September, 1999). In October of 2013, a state court in Arkansas certified a class of Arkansas smokers of light cigarettes against the Philip Morris Company, a case in which Mr. Barrett was co-counsel for the class. In the fall of 2016, that case settled for $45 million.

### C. Mr. Barrett and His Firm Have Sufficient Resources to Advance the Litigation in a Timely Manner.

Mr. Barrett and BLG are capable of committing the resources needed for this litigation during the entirety of its duration. They are well-established, with the financial wherewithal to support the litigation. They have led various other antitrust class actions, as well as other complex and resource-intensive litigations, and are knowledgeable about the resources necessary to adequately litigate this type of case. Mr. Barrett and his firm have more than enough resources to prosecute this action and will devote those resources in a manner that best serves the interests of the class members. (*See* Barrett Decl.)

### Conclusion

For the foregoing reasons, Plaintiff Vienna Eqho Farms respectfully requests that the Court enter an order appointing John W. "Don" Barrett and Barrett Law Group, P.A. as Interim Lead Counsel for the putative classes.

Dated: March 2, 2021

By:*/s/ Don Barrett*
John W. "Don" Barrett (admitted)
Katherine Barrett Riley (to apply *pro hac vice*)
David McMullan, Jr. (to apply *pro hac vice*)
Sterling Starns (admitted *pro hac vice*)
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square North
Lexington, Mississippi 39095-0927
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
Email: dbarrett@barrettlawgroup.com
Email: kbriley@barrettlawgroup.com
Email: dmcmullan@barrettlawgroup.com
Email: sstarns@barrettlawgroup.com

Jonathan W. Cuneo (to apply *pro hac vice*)
Victoria Sims (to apply *pro hac vice*)
Blaine Finley (to apply *pro hac vice*)
**CUNEO GILBERT & LADUCA, LLP**

4725 Wisconsin Ave., NW Suite 200
Washington, DC 20016
202-789-3960
Email: jonc@cuneolaw.com
Email: vicky@cuneolaw.com
Email: bfinley@cuneolaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 2, 2021, I electronically filed the foregoing Memorandum in Support of Motion for Appointment of Interim Lead Class Counsel for John W. "Don" Barrett with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Don Barrett*
John W. ("Don") Barrett