**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| VIENNA EQHO FARMS,<br><br>*Plaintiff,*<br><br>v.<br><br>BAYER CROPSCIENCE LP, *et al.*,<br><br>*Defendants.* | Case No. 3:21-CV-0204-NJR |

**INTERESTED PARTY PLAINTIFFS' OPPOSITION TO MOTION FOR
APPOINTMENT OF INTERIM LEAD CLASS COUNSEL FOR JOHN W. "DON"
BARRETT AND BARRETT LAW GROUP, P.A.**

**INTRODUCTION**

Plaintiffs Barbara Piper, as Executrix of the Estate of Michael Piper, Charles Lex, and John Swanson (collectively "Interested Party Plaintiffs") submit this Opposition to Motion for Appointment of Interim Lead Class Counsel for John W. "Don" Barrett and Barrett Law Group, P.A. ("BLG Motion").[1] For the reasons detailed in the Interested Party Plaintiffs' Motion to Consolidate and Appoint an Executive Committee as Interim Lead Counsel ("IPP Leadership Motion"),[2] the class plaintiffs' interests would be best served by an Executive Committee comprised of (1) Stephen Tillery of Korein Tillery, LLC, (2) Vincent Briganti of Lowey Dannenberg P.C., (3) Linda Nussbaum of Nussbaum Law Group, P.C., and (4) Joseph Bruckner of Lockridge Grindal Nauen P.L.L.P. (collectively "Committee").

---

[1] Unless otherwise noted, "BLG" shall collectively refer to Mr. Barrett and the Barrett Law Group.
[2] Interested Party Plaintiffs' Leadership Motion was filed in *Piper v. Bayer CropScience LP*, 3:21-CV-00021-NJR, and is incorporated by reference as if fully set forth herein. (*Piper* Dkt. 53).

The *Vienna Eqho* complaint filed by BLG is essentially a carbon copy of the Consolidated Complaint filed by the Interested Party Plaintiffs.[3] The pleadings rely on the same facts, name the same defendants, identify the same injuries and assert the same antitrust claims. This is not surprising, considering the Interested Party Plaintiffs filed suit, consolidated their complaints and moved for leadership all before *Vienna Eqho* was even filed. BLG did not identify, investigate, and initiate a case. It copied one.

Further, BLG is not better qualified to lead the class. The IPP Leadership Motion clearly demonstrates the Committee possesses impressive class action and antitrust expertise, and BLG does not argue otherwise. BLG does not, for example, identify a missing skill or experience that disqualifies the Committee from leadership. Nor does BLG identify some special qualification that BLG and only BLG can offer. Simply put, nothing in the Motion shows why BLG is a better—as opposed to merely different—choice for class leadership.

Finally, the Court should reject BLG's argument that single firm leadership is more efficient than a committee. Committees are appropriate and useful in complex class actions. Unlike a single firm, committees possess a deep bench of skills that can be coordinated and deployed for plaintiffs' benefit. Interestingly, despite advocating for sole interim control of *this* class, the cases cited as examples of BLG's experience all involved co-leadership. As such, they hardly support BLG's contention that Mr. Barrett's solo leadership is in the best interests of the class.

For these reasons, as well as the reasons provided in the IPP Leadership Motion, the Court should deny BLG's Motion and appoint the Committee as interim class counsel.

---

[3] The Consolidated Complaint was filed on behalf of plaintiffs in *Piper, Swanson v. Bayer CropScience LP*, 3:21-CV-0046-NJR, *Lex v. Bayer CropScience LP*, 3:21-CV-0122-NJR, *Jones Planting Co. III v. Bayer CropScience LP*, 3:21-CV-00173-NJR, and *Canjar v. Bayer CropScience LP*, 3:21-CV-00181-NJR (collectively "Consolidated Actions"). (*Piper* Dkt. 58).

**ARGUMENT**

**I.      THE MAJORITY OF PLAINTIFFS SUPPORT THE COMMITTEE.**

The Interested Party Plaintiffs' proposal is the product of private ordering, a method recommended by the Federal Judicial Center. *See* MANUAL FOR COMPLEX LITIGATION, § 21.272. When "lawyers agree who should be lead class counsel," the court may "approve[] the selection after a review to ensure that the counsel selected is adequate to represent the class under Rule 23(g)." *Id*. Here, the suggested structure reflects the consensus of the Committee firms, and is also supported by counsel in the Consolidated Actions. (*Piper* Dkt. 53 & 81). Additionally, Plaintiffs' counsel in *Duncan v. Bayer CropScience LP*, 3:21-CV-00158-NJR, supports the Committee, asking only that attorney Derek K. Brandt be added as a member. (*Duncan* Dkt. 33). In sharp contrast, to Interested Party Plaintiffs' knowledge, no other attorneys support BLG's Motion to be appointed sole interim counsel.

**II.     BLG IS NOT BETTER QUALIFIED TO LEAD THE CLASS.**

     **A.      The Legal Standard for Appointing Interim Class Counsel.**

Rule 23 does not include any specific criteria controlling the appointment of interim class counsel, so courts typically consider the four factors in Rule 23(g)(1) which govern the selection of class counsel. *Simpkins v. Wells Fargo Bank, N.A.*, 2013 WL 12051028, at *1 (S.D. Ill. Jun. 28, 2013). Those factors are: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court may also, in its discretion, consider any other criteria it deems relevant. Fed. R. Civ. P. 23(g)(1)(B).

### B. There is No Evidence BLG Did Anything to Independently Identify or Investigate the Claims in the *Vienna Eqho* Complaint.

The actions taken by counsel for the Interested Party Plaintiffs to identify, investigate and initiate the Consolidated Actions are described in detail in the IPP Leadership Motion. (*Piper* Dkt. 53, 8-9). To briefly reiterate, counsel: (1) obtained documents through FOIA and requests to the Federal Court of Canada regarding an ongoing Canadian Competition Bureau investigation; (2) conducted industry research and spoke with market participants and agriculture journalists to fully understand the crop input market; (3) identified potential injured parties; and (4) researched legal claims, with a particular focus on antitrust boycott opinions. The breadth of this work was evident in the *Piper* complaint, the first-filed action initiated by Korein Tilley and Lowey against the manufacturers, wholesalers, and retailers who conspired to fix crop input prices. (*Piper* Dkt. 1). *Piper,* and the subsequent Consolidated Complaint, present a detailed picture of the crop input market, Defendants' conduct and the injuries suffered by plaintiff farmers.

The *Vienna Eqho* complaint is a copycat in every meaningful way. It was filed on February 22, 2021, almost two months after *Piper* (filed on January 8, 2021) and also after the Consolidated Complaint (filed on February 18, 2021). (*Vienna Eqho* Dkt. 1; *Piper* Dkt. 1 & 58). Moreover, many (if not most) of *Vienna Eqho's* factual allegations are copied nearly word-for-word from the Consolidated Complaint. (*See, e.g., Piper* Dkt. 58 at ¶3 comp. to *Vienna Eqho* Dkt. 1 at ¶3; *Piper* Dkt. 58 at ¶44 comp. to *Vienna Eqho* Dkt. 1 at ¶37; *Piper* Dkt. 58 at ¶54 comp. to *Vienna Eqho* Dkt. 1 at ¶47). The cases involve the same Defendants. (*Piper* Dkt. 58 at 1; *Vienna Eqho* Dkt. 1 at 1). The cases describe the same antitrust injury. (*Piper* Dkt. 58 at ¶97; *Vienna Eqho* Dkt. 1 at ¶88). The class definitions are identical. (*Piper* Dkt. 58 at ¶98; *Vienna Eqho* Dkt. 1 at ¶89). And, perhaps

most importantly, *Vienna Eqho's* legal theories duplicate those pleaded in the Consolidated Complaint. (*Piper* Dkt. 58 at 33-65; *Vienna Eqho* Dkt. 1 at 26-53).[4]

In short, there is no indication that BLG did any independent factual investigation or legal research before filing *Vienna Eqho*. This is presumably why BLG's Motion asserts—without any specific explanation or examples—that "Mr. Barrett and his firm invested significant time and resources into this litigation, including investigating and drafting the complaint, investigating the nature of the alleged conspiracy and its effect on Plaintiff and the classes, and coordinating strategy with co-counsel." (*Vienna Eqho* Dkt. 24-1 at 6). Mr. Barrett's declaration is, if possible, even more vague, claiming "I and my firm, BLG, have spent time investigating the nature of the conspiracy at issue and its effect on Plaintiff and the putative classes." (*Vienna Eqho* Dkt. 24-3 at ¶3). These generalized claims of pre-filing due diligence hardly demonstrate the type of investigative initiative justifying a leadership role.[5]

### C. BLG Does Not Possess Stronger Class Action Experience, Antitrust Expertise, or Resources than the Proposed Committee.

"When presented with competing requests for appointment, the court must appoint the applicant best able to represent the interests of the class." *In re Navistar MaxxForce Engines Marketing, Sales Practices & Prods. Liability Litigation*, 2015 WL 1216318, at *1 (N.D. Ill. 3/5/15). The IPP Leadership Motion describes in detail the impressive qualifications of the

---

[4] The *Vienna Eqho* complaint does not include state antitrust claims under Connecticut, Florida or West Virginia law. In all other respects, the legal claims are the same as those asserted in the Consolidated Complaint. (*Vienna Eqho* Dkt. 1; *Piper* Dkt. 58).

[5] On March 16, 2021, BLG filed a second crop input complaint, *Little Omega v. Bayer CropScience L.P.*, 3:21-CV-00297 (S.D. Ill.) This pleading, like the *Vienna Eqho* complaint, is a near-replica of the Consolidated Complaint and merely parrots the factual allegations and legal claims asserted in that earlier filing. (*See Little Omega* Dkt. 1). As such, nothing in the *Little Omega* complaint indicates BLG conducted an independent investigation or otherwise performed unique work entitling BLG to serve as interim class counsel.

Committee firms and attorneys. (*Piper* Dkt. 53 at 9-19). Given this deep well of complex class action experience, antitrust expertise and resources, no one could seriously dispute the Committee's fitness to lead.

To its credit, BLG makes no such argument, opting instead to catalogue its own achievements. (*Vienna Eqho* Dkt. 24-1 at 6-10). BLG's Motion, however, fails to explain why the firm should catapult from last in line to leadership when all counsel did was file a copycat complaint. BLG's Motion does not, for example, identify a skill or resource the Committee lacks or, conversely, a qualification that BLG alone possesses. The Interested Party Plaintiffs submit these arguments are missing because they cannot be made. The Committee enjoys vast class action experience, deep antitrust expertise and the technological and financial wherewithal to see this case through trial. They brought those skills and resources to bear when they first-filed *Piper*, then the other Consolidated Actions and finally the Consolidated Complaint, all before *Vienna Eqho* even existed. Simply put, the Committee—not BLG—has demonstrated the subject-matter know-how, strategic initiative and coordinated approach required to represent the class not just adequately, but with excellence.

### III. THE CLASS IS BETTER SERVED BY A COMMITTEE STRUCTURE THAN A SINGLE CLASS LEADER.

Under Rule 23(g)(1)(B), the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Here, BLG argues that putting a single firm in control will be more efficient and effective than committee leadership. (*Vienna Eqho* Dkt. 24-1 at 4-5). The opposite is true; indeed, BLG's own Motion undermines that contention.

Selecting multiple firms as interim class counsel is appropriate and beneficial in complex class actions. This Court and others across the country routinely appoint interim co-leads and

executive committees in complicated, antitrust litigation where a diversity of ideas, geographical reach and a coordinated litigation strategy are required.[6] Such benefits are only enhanced when, as here, the proposed leaders have a demonstrated history of working together productively and efficiently.[7] Appointing multiple co-leads and/or a committee is particularly justified when the putative class action is nationwide, legally complex, likely to involve significant discovery and asserted against corporate defendants with substantial litigation reserves. Those factors are all present here, where the Consolidated Actions assert federal and state antitrust claims on behalf of farmers across the United States against international companies with vast resources. Providing the class with a committee of seasoned antitrust litigators who know how to control all the moving parts of such litigation is not only preferable, it is necessary.

---

[6] *See, e.g., Simpkins v. Wells Fargo Bank, N.A.,* 2013 WL 12051028 (S.D. Ill. June 28, 2013) (appointing two co-lead firms, one liaison firm and an executive committee of four firms as interim class leaders); *Moehrl v. Nat'l Ass'n of Realtors*, 2020 WL 5260511, at *2 (N.D. Ill. 5/30/20) (approving three-firm leadership given "the magnitude and complexity of this action, which involves the largest real estate brokers in the United States and is nationwide in scope"); *In re Fairlife Milk Prods. Marketing & Sales Practices Litig.*, 2020 WL 362788, at *3 (N.D. Ill. 1/22/20) (appointing multi-firm leadership because "the cross-fertilization of ideas from multiple law firms is preferable to a single firm as lead counsel and [the court is] confident that it will have in place the safeguards to ensure that a tripartite leadership structure will not result in duplication of work or other inefficiencies."); *In re Qualcomm Antitrust Litig.*, 2017 WL 2222531 (N.D. Cal. May 15, 2017) (appointing three firm steering committee); *Brigiotta Farmland Produce & Garden Center, Inc. v. United Potato Growers of Idaho, Inc.*, 2010 WL 3928544 (D. Id. October 4, 2010) (appointing 10 firm executive committee); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2008 WL 1883447 (D. D.C. April 28, 2008) (approving five-firm executive committee to assist interim co-lead counsel); *Waudby v. Verizon Wireless Serv., LLC,* 248 F.R.D. 173 (D. N.J .2008) (appointing four firms as interim class counsel); *In re Pressure Sensitive Labelstock Antitrust Litig.,* 2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) (appointing four law firms previously appointed as co-lead interim counsel as co-lead class counsel); *In re Air Cargo Shipping,* 240 F.R.D. 56 (E.D.N.Y.2006) (appointing four firms as co-lead counsel).

[7] *See, e.g. In re WaWa, Inc. Data Security Litig,* 2:19-CV-06019 (E.D. Pa.) (Lowey, Nussbaum, & Lockridge); *In re Credit Default Swaps Antitrust Litig.*, 1:13-MD-02476 (S.D.N.Y.) (Korein Tillery, Lowey, & Nussbaum); *In re ICE LIBOR Antitrust Litig.*, 1:19-CV-00439 (S.D.N.Y.) (Korein Tillery & Lowey); *In re Capacitors Antitrust Litig.*, 3:17-md-02801 (N.D. Ill.) (Nussbaum & Lockridge); *In re Domestic Airline Travel Antitrust Litig.*, 1:15-MC-01404 (D.D.C.) (Korein Tillery & Lockridge).

Moreover, the cases cited in BLG's own Motion undermine the argument that Mr. Barrett routinely leads classes on his own or that singular appointments are the norm. BLG contends that Mr. Barrett's experience in "*Auto Parts, First Impressions Salon, Inc.*, and *In Re: Inter-Op Hip Prosthesis Liability Litigation*, make[s] him best qualified to lead the class litigation here." (*Vienna Eqho* Dkt. 24-1 at 5). But Mr. Barrett was not appointed sole lead counsel in any of those cases. To the contrary, *In re Automotive Wire Harness Systems Antitrust Litigation*, 12-MD-02311 (E.D. Mich.), appointed three co-leads, (*MDL 2311* Dkt. 218 at 3-4), *First Impressions Salon, Inc. v. National Milk Producers Federation*, 13-CV-454 (S.D. Ill.), did the same, (*First Impressions* Dkt. 301 at 1-2), and *In re Inter-Op Hip Prosthesis Liability Litigation,* MDL Dkt. No. 1404 (N.D. Ohio), selected Mr. Barrett as one of eight lead attorneys, (*MDL 1404* Dkt. 58 at 2-3).

Cases such as these, involving multiple lawsuits, complicated legal claims and large corporate defendants, are complex and resource-intensive. In such instances, class plaintiffs only benefit from a leadership structure that leverages the skills, experience and reserves of multiple firms. The proposed Committee will happily adhere to or create whatever reporting standards the Court requires to ensure work is being properly delegated, efficiently performed and of high-quality. Class plaintiffs deserve no less.

## CONCLUSION

For these reasons, the Interested Party Plaintiffs respectfully request the Court deny BLG's Motion and instead establish an Executive Committee composed of Korein Tillery, Lowey, Nussbaum, and Lockridge, with Stephen Tillery and Vincent Briganti as Committee Co-Chairs.

DATED: March 16, 2021

*/s/ Jamie L. Boyer*
Stephen M. Tillery (Ill. Bar No. 2834995)
Jamie Boyer (Ill. Bar No. 6281611)
Carol O'Keefe (Ill. Bar No. 6335218)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: 314-241-4844
Facsimile: 314-241-3525
stillery@koreintillery.com
jboyer@koreintillery.com
cokeefe@koreintillery.com

George A. Zelcs (Ill. Bar No. 3123738)
John Libra (Ill. Bar No. 6286721)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Jonathon Byrer (Ill. Bar No. 6292491)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com
jlibra@koreintillery.com
rewing@koreintillery.com
jbyrer@koreintillery.com


*/s/ Vincent Briganti (by consent)*
Vincent Briganti (pro hac vice forthcoming)
Christian Levis (pro hac vice forthcoming)
Roland R. St. Louis, III (pro hac vice forthcoming)
**LOWEY DANNENBERG P.C.**
44 South Broadway
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
rstlouis@lowey.com

*/s/ W. Joseph Bruckner (by consent)*
W. Joseph Bruckner (MN No. 0147758)
Robert K. Shelquist (MN No. 21310x)
Brian D. Clark (MN No. 0390069)
Rebecca A. Peterson (MN No. 0392663)
Stephanie A. Chen (MN No. 0400032)
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
rkshelquist@locklaw.com
bdclark@locklaw.com
rapeterson@locklaw.com
sachen@locklaw.com

*/s/ Linda P. Nussbaum (by consent)*
Linda P. Nussbaum (pro hac vice forthcoming)
Bart D. Cohen (pro hac vice forthcoming)
Christopher B. Sanchez (Ill. Bar No. 6272989)
Louis Kessler (Ill. Bar No. 6277776)
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
(917) 438-9102
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com
csanchez@nussbaumpc.com
lkessler@nussbaumpc.com

## ECF ATTESTATION

I, Jamie L. Boyer, am the ECF User whose ID and Password are being used to file the foregoing document. I hereby attest that all undersigned counsel to the motion have concurred in this filing.

DATED: March 16, 2021                                                                 */s/ Jamie L. Boyer*